# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AMANDA ULLOA LASTRE,<br><br>　　　　Petitioner,<br>　　v.<br><br>TODD BLANCHE, et al.,<br><br>　　　　Respondents. | No. 5:26-cv-02161-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I.   SUMMARY

Petitioner Amanda Ulloa Lastre ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California. In this habeas action, Petitioner challenges the legality of her re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking her liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on February 25, 2026—without notice, without a hearing, and without any individualized

determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain her.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Cuba. (Dkt. No. 14-2 at 2.) Petitioner applied for admission into the United States via the San Ysidro Port of Entry Pedestrian West Facility with a CBP One application on September 29, 2023. (Dkt. No. 14-2 at 3.) Petitioner represents that she was paroled into the United States after inspection by a U.S. Customs and Border Protection ("USCBP") officer on that same date. (Dkt. No. 1 at 2 and Dkt. No. 1-1 at 5.)

Petitioner contends that she is a Cuban national eligible to adjust status under the Cuban Adjustment Act (CAA), 8 U.S.C. § 1255, note (Pub. L. 89-732). (Dkt. No. 1 ¶5.) Petitioner represents that following her parole into the United States she developed ties to the community, filed an Application to Register Permanent Residence or Adjust Status, and that United States Citizenship and Immigration Services ("USCIS") scheduled her for a biometrics appointment at the USCIS Application Support Center on July 16, 2025. (Dkt. No. 1 ¶¶7 and 24.)

On February 19, 2026, Petitioner was arrested by the Orem Police Department, State of Utah, for the offense of "THEFT/RECEIVING - VALUE >= $5000, in violation of UCA 76-6-408 (2) + (3AI)." (Dkt. No. 14-2 at 3.) Petitioner has no other criminal history. (Dkt. No. 1¶8 and Dkt. No. 14-2 at 3.) Petitioner represents that the Utah County Attorney's Office declined to prosecute her for the offenses that were the basis of her arrest. (Dkt. No. 1-1 at

15.)

On February 25, 2026, ICE arrested Petitioner at the Utah County Jail after a criminal court judge authorized her release. (Dkt. No. 14-2 at 3 and Dkt. No. 13-1 at 3.) Respondents assert that "it does not appear that any pre-deprivation process was provided at the time of Petitioner's detention." (Dkt. No. 14 at 2.) Petitioner contends that since her detention, ICE has not identified any changed circumstances that justify the revocation of parole and the imposition of custody. (Dkt. No. 10 at 3.) Petitioner also represents that she has been advised that she does not qualify for a bond hearing because the government has classified her as an applicant for admission. (Dkt. No. 1 ¶86.) Petitioner remains in ICE custody at the Adelanto immigration detention facility as of the filing of the instant Petition. (Dkt. No. 1 ¶2.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on April 27, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on May 4, 2026. (Dkt. No. 7.) Petitioner filed a Traverse to Petition for Writ of Habeas Corpus ("Traverse") on May 7, 2026. (Dkt. No. 10.)  Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.   DISCUSSION

Petitioner argues that her re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked her liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether she posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1226(a) because she is in removal proceedings. (Dkt. No. 7 at 2.) Respondents

3

further contend that to the extent Petitioner is entitled to any relief under the Petition, it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a). (Dkt. No. 7 at 203.) Respondents do not address Petitioner's due process claim or other claims.

### A. The Court Has Subject Matter Jurisdiction.

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

### B. Petitioner's Detention Violates Due Process.

Petitioner argues that her sudden re-detention—after more than two years of residing freely in the community following her release on parole by USCBP—violates the Fifth Amendment's guarantee of due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Response to the Petition. (Dkt. No. 7.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No.

ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). The Court notes Respondents' position and independently evaluates the merits of Petitioner's due process challenge.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *Saravia v. Sessions* reaffirmed this principle in the context of immigration re-detention: once the government has made a prior release determination, it cannot later re-detain the individual without evidence of materially changed circumstances and without providing prompt, adequate process before depriving the person of liberty. 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

Read together with the recent decisions in this District addressing sudden re-detention of compliant noncitizens, these authorities underscore the principle that where a noncitizen has lived in the community under parole or supervision-based release and has remained fully compliant, the Government may not revoke that conditional liberty without first affording constitutionally sufficient pre-deprivation process or identifying a material intervening change in circumstances.

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that her re-detention on February 25, 2026, without notice, without a meaningful opportunity to be heard, and without any material

change in circumstances, and her ongoing confinement, violates the protections of Fifth Amendment due process.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from re-detaining her without adequate pre-deprivation process. ICE's authority to re-arrest a noncitizen previously released on bond, recognizance, or supervision is not without limitation. 8 U.S.C. § 1226(b) provides that the Attorney General may revoke a prior release decision and re-arrest the noncitizen, and 8 C.F.R. § 236.1(c)(9) permits revocation "at any time" in the discretion of designated DHS officials. However, Courts and the agency have consistently interpreted these provisions to require a material change in circumstances before a release may be revoked. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981) (a prior bond decision should not be disturbed absent changed circumstances); *Saravia v. Barr*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd, 905 F.3d 1137 (9th Cir. 2018) (recognizing DHS practice requiring changed circumstances before re-arrest).

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner asserts she has lived in the United States for more than two years, during which time she built ties to the community and became eligible for and applied to Register Permanent Residence or Adjust Status. (Dkt. No. 1 ¶¶7 and 24.) Respondents do not allege that Petitioner violated any conditions of her parole during this time. (Dkt. No. 7 at 2.) While Petitioner remained subject to the conditions of her parole during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain

7

a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's compliant period of supervised release and eligibility to adjust status under the Cuban Adjustment Act (CAA), 8 U.S.C. § 1255, note (Pub. L. 89-732), the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining her freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet

8

nothing in the record suggests that Petitioner's continued release threatened either interest at the time of her re-detention on February 25, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release on September 29, 2023, and her re-detention on February 25, 2026. In their Answer to the Petition, Respondents assert no allegations of criminal conduct, no supervision violations, and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of her re-detention on February 25, 2026. (Dkt. No. 7.) As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner was re-arrested in Utah and transported across the country to a detention facility in Adelanto, CA, where she has been detained for months without an opportunity to be heard as to whether her detention is warranted. (Dkt. No. 14 at 2 and Dkt. No. 1 ¶¶2 and 25.) As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

Petitioner represents that during the course of her more than two (2) years on parole, she developed ties to the community, filed an Application to Register Permanent Residence or Adjust Status, and that USCIS scheduled her for a biometrics appointment. (Dkt. No. 1 ¶¶7 and 24.) The record reflects that during that entire period, the Respondents repeatedly determined that

9

Petitioner could remain safely in the community. (Dkt. No. 1 ¶¶1-9.) Yet, despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking her release would further the permissible purposes of immigration detention. (Dkt. No. 14 at 2.)  Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the court concludes that the risk of erroneous deprivation is unacceptably high.

### 3. Government Interest

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community. At the time of her detention on February 25, 2026, Petitioner had resided freely in the community for more than two (2) years following USCBP's grant of parole, and she had a pending Application to Register Permanent Residence or Adjust Status. (Dkt. No. 1 ¶¶7 and 24.) During the entire period following her parole into the United States, Respondents identified no danger or risk of flight. (Dkt. No. **7**.)

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration

10

custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents identify no operational, administrative, or public-safety reasons that would have prevented the Respondents from providing Petitioner with pre-deprivation notice or a meaningful opportunity to be heard, nor do they articulate any individualized risk that could justify dispensing with such safeguards. The Respondents' interest in proceeding without adequate pre-deprivation notice or a hearing prior to detention is

therefore diminished and unsupported by any new factual development, while Petitioner's liberty interest remains substantial.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on February 25, 2026, without adequate pre-deprivation process violated due process and that she should be released forthwith.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Amanda Ulloa Lastre's (A#249-275-929) immediate release and restoration of liberty to the conditions existing at the time of her detention on February 25, 2026, along with her personal belongings, including her identification, passport, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine her prior to her re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be

12

provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   July 29, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

13